**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA

    - v. -

MICHELLE MORTON,

        Defendant.

No. 16-cr-00371 (RA)

**DEFENDANT MICHELLE MORTON'S MEMORANDUM OF LAW IN OPPOSITION**
**TO THE GOVERNMENT'S MOTIONS *IN LIMINE***

ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, New York 10019
(212) 506-5000

*Attorneys for Defendant Michelle Morton*

# TABLE OF CONTENTS

**Clause**          **Page**

TABLE OF AUTHORITIES ........................................................................................II

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT .............................................................................................................. 1

I.      THE COURT SHOULD ALLOW EVIDENCE OF MS. MORTON'S VOLUNTARY COOPERATION WITH LAW ENFORCEMENT ................................. 1

      A.      Ms. Morton's Statements to Law Enforcement Are Admissible as Non-Hearsay or Under Rule 803(3)'s Hearsay Exception............................................. 1

            1.      Ms. Morton's Statements and Actions are Admissible as Non-Hearsay ........................................................................................... 1

            2.      Ms. Morton's Statements are Also Admissible Under Rule 803(3)'s Hearsay Exception........................................................ 4

      B.      Evidence of Ms. Morton's Cooperation with Law Enforcement is Relevant and Carries No Risk of Undue Prejudice, Confusing the Issues, or Misleading the Jury.................................................................................. 9

CONCLUSION............................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States v. Benalcazar*,
  No. 09-cr-144, 2011 WL 4553027 (N.D. Ill. Sept. 29, 2011)..............................................5, 8

*United States v. Biaggi*,
  909 F.2d 662 (2d Cir. 1990)...........................................................................................9, 10

*United States v. Blake*,
  195 F. Supp. 3d 605 (S.D.N.Y. 2016)...................................................................................5

*United States v. Brady*,
  No. 02-cr-1043, 2004 WL 86414 (E.D.N.Y. Jan. 20, 2004)................................................14

*United States v. Cardascia*,
  951 F.2d 474 (2d Cir. 1991)................................................................................................6

*United States v. Crown*
  No. 99-cr-1044, 2000 WL 709003 (S.D.N.Y. May 31, 2000)..............................................13

*United States v. Detrich*,
  865 F.2d 17 (2d Cir. 1988)..............................................................................................2, 4

*United States v. Dinga*,
  609 F.3d 904 (7th Cir. 2010) .......................................................................................5, 7, 8

*United States v. Gaviria*,
  804 F. Supp. 476 (E.D.N.Y. 1992) ....................................................................................14

*United States v. Harris*,
  733 F.2d 994 (2d Cir. 1984)................................................................................................4

*United States v. Lawal*,
  736 F.2d 5 (2d Cir. 1984)....................................................................................................6

*United States v. Levin*,
  No. 15-cr-101, 2016 WL 299031 (S.D.N.Y. Jan. 25, 2016)................................................14

*United States v. Litvak*,
  808 F.3d 160 (2d Cir. 2015)..........................................................................................12, 13

*United States v. Marin*,
  669 F.2d 73 (2d Cir. 1982)..................................................................................................2

*United States v. Paccione*
    949 F.2d 1183, 1201 (2d Cir. 1991) ...........................................................................13

*United States v. Shakur*,
    No. 84-cr-220, 1988 WL 31745 (S.D.N.Y. Mar. 22, 1988) ................................2, 6

*United States v. Yu*,
    697 F. Supp. 635 (E.D.N.Y. 1988) ............................................................................6

*United States v. Watts*,
    934 F. Supp. 2d 451 (E.D.N.Y. 2013) ................................................................13, 14

**Other Authorities**

Fed. R. Evid. 801(c) ............................................................................................................1, 2

GX 3004-B ............................................................................................................................10

Rule 401 ................................................................................................................................12

Rule 403 .............................................................................................................11, 12, 13, 14

Rule 803(3) ..................................................................................................................  *passim*

Rule 803(3)'s ......................................................................................................................1, 4

6 Wigmore on Evidence § 1732 ...........................................................................................7

## PRELIMINARY STATEMENT

Defendant Michelle Morton respectfully submits this memorandum of law in opposition to the government's motions *in limine* (the "Motion").

## ARGUMENT

**I.   THE COURT SHOULD ALLOW EVIDENCE OF MS. MORTON'S VOLUNTARY COOPERATION WITH LAW ENFORCEMENT**

The government seeks to preclude Ms. Morton from introducing statements she made to federal authorities in 2015 in connection with reporting her suspicions about Jason Galanis and later assisting in the government's investigation. Even further, the government appears to seek to prevent Ms. Morton from introducing any evidence whatsoever about her efforts to report suspicious conduct and assist the government in its investigation. (*See* Mot. at 11-12 (the government seeks to "preclude evidence that defendant Morton attempted to act as a purported whistleblower"). This evidence is plainly admissible and is critical to Ms. Morton's defense. The statements themselves are non-hearsay or fall within a hearsay exception. Moreover, both Ms. Morton's statements and actions are highly probative and could not feasibly cause prejudice to the government or mislead the jury. Accordingly, the Court should deny the government's Motion to preclude.

**A.   Ms. Morton's Statements to Law Enforcement Are Admissible as Non-Hearsay or Under Rule 803(3)'s Hearsay Exception**

**1.   *Ms. Morton's Statements and Actions are Admissible as Non-Hearsay***

As a preliminary matter, Ms. Morton's statements are admissible as non-hearsay to the extent Ms. Morton does not offer them to prove the truth of the matter asserted in the statements. *See* Fed. R. Evid. 801(c). There are a number of reasons why Ms. Morton's statements are relevant to the charges against her without Ms. Morton using them to prove the truth of the matters asserted. For example, the charges against Ms. Morton require the government to prove

1

criminal knowledge and intent.  Ms. Morton's statements to law enforcement during the course of the alleged criminal activity will show (1) what she knew or thought she knew (regardless of whether it was true); (2) demonstrate that she assisted law enforcement (about which there is no dispute); and (3) serve as circumstantial evidence of her state of mind at various times during the course of the alleged misconduct.  Used for those evidentiary purposes, Ms. Morton's statements are not hearsay and the Court should thus admit this evidence at trial.  *See, e.g., United States v. Detrich*, 865 F.2d 17, 21 (2d Cir. 1988)  ("Without regard for the truth of [an individual's] plans, the jury could draw from the statement an important inference as to what [the defendant] knew— or thought he knew. . . .  Where, as here, the statement is offered as circumstantial evidence of [the defendant's] state of mind, it does not fall within the definition given by Rule 801(c); because it was not offered to prove the truth of the matter asserted."); *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982) ("When the defendant offers his own statement simply to show that it was made, rather than to establish the truth of the matter asserted, the fact that the statement was made must be relevant to the issues in the lawsuit."); *United States v. Shakur*, No. 84-cr-220, 1988 WL 31745, at *3 (S.D.N.Y. Mar. 22, 1988) ("In sum: to be admissible, on the defense case a criminal defendant's out-of-court statements must be probative of the defendant's then existing state of mind; and that state of mind must be relevant to the government's charges, or its proof in support of those charges.  If those criteria are met, the statement is admissible, with issues of credibility being for the jury.").

Separate and apart from her statements, Ms. Morton's actions are relevant to her defense. There are certain undeniable facts—corroborated by documentary evidence—that the government should not be able to prevent the jury from learning:

- First, Ms. Morton contacted a colleague at FINRA to ask for assistance in reporting her concerns relating to the bonds.

2

- Second, approximately two weeks later the SEC sent Hughes-Atlantic a document request seeking information about the matters she reported to FINRA.

- Third, soon thereafter Ms. Morton twice met with the FBI and once with the United States Attorney's Office ("USAO").

- Fourth, Ms. Morton volunteered to wear and subsequently wore a wire to two meetings and placed numerous consensually-recorded calls to help the government gather evidence.

- Fifth, Ms. Morton allowed the USAO to copy the contents of her cellular telephone, thereby giving it access to information it intends to use to seek her conviction.

- Sixth, Ms. Morton sought advice from the USAO about what to do with the bonds.

- Seventh, Ms. Morton sought assistance from the SEC to put a monitor in place to protect Atlantic Asset Management's (AAM) clients from a Galanis-sponsored takeover.

- Finally, Ms. Morton sent a letter to AAM's clients stating she had done nothing wrong.

The government cannot change the facts and must take them as they come. These facts are all admissible either as direct evidence or to demonstrate Ms. Morton's state of mind, and this evidence is critical to Ms. Morton's defense.

Multiple witnesses know that Ms. Morton assisted the government in August and September 2015. Several individuals on the government's witness list proffered that Ms. Morton stated in or around August and September 2015 that she was working with the authorities. Moreover, the government's case agents are aware of or have personal knowledge of Ms. Morton's assistance in the investigation. These facts simply are not hearsay because they are historical occurrences. To prevent Ms. Morton from eliciting the fact that she assisted the government is to revise history.

The government glosses over the reality that Ms. Morton's statements and actions are *not* hearsay for the relevant purposes stated above. Rather, it focuses solely on whether an exception

to the hearsay rule applies.  Because Ms. Morton's statements and actions are not hearsay, however, the government's arguments are misplaced and the Court should deny its Motion well in advance of opening statements.  *See, Detrich*, 865 F.2d at 21.  ("[A]s the statement was nonhearsay we need not consider . . . the exceptions to the hearsay rule.").

2.     ***Ms. Morton's Statements are Also Admissible Under Rule 803(3)'s Hearsay Exception***

Ms. Morton's statements to authorities are also admissible under Rule 803(3) as statements of her then-existing state of mind.  *See, e.g.*, *United States v. Harris*, 733 F.2d 994, 1004 (2d Cir. 1984) ("Depending on the precise phraseology used by each witness, their testimony would have been admissible either as nonhearsay, or under the then existing state of mind hearsay exception.").  Under Rule 803(3), "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan)" is "not excluded by the rule against hearsay." Fed. R. Evid. 803(3).  The statements at issue will show Ms. Morton's mindset and intent at the time she approached and began assisting law enforcement.  These include her contemporaneous understanding of what transpired with respect to the bonds, her beliefs as to the propriety of the bond issuances and placements, and her intent or plan with respect to the bonds.  That the government alleges she participated in multiple criminal conspiracies at that time—and would continue to participate in those conspiracies for almost a year beyond her initial outreach to the government—further warrants admission of her statements to law enforcement under Rule 803(3).

In essence, the government seeks to whitewash the past by excluding any reference to Ms. Morton's undeniable assistance in its investigation.  The Superseding Indictment charges a conspiracy that ran approximately one year beyond the time when Ms. Morton contacted regulators to report suspicious conduct and proactively assisted the USAO in its investigation.

4

Superseding Indictment ¶¶ 26, 30, 32, 36. Thus, by asking this Court to prevent Ms. Morton's assistance from coming into evidence, the government seeks to eliminate any obstacles to the false narrative it has spun since the filing of the criminal complaint.  To wit, that even though Ms. Morton wore wires during government-sponsored meetings with Jason Galanis and others, Ms. Morton was somehow still a member of the alleged conspiracies.  The Court cannot allow the government to perpetuate this fiction.

The government provides no evidentiary reason to exclude evidence about Ms. Morton's assistance under Rule 803(3).  The government first argues that Ms. Morton's statements were backward-looking and that Rule 803(3) only permits statements that "face forward, rather than backward."  Mot. at 10.  The government is wrong and its argument is contradicted by its own allegations.  The Superseding Indictment alleges, with respect to each count against Ms. Morton, that criminal conduct occurred from March 2014 "*through in or about April 2016*."  *Id* at ¶¶ 26, 30, 32, 36 (emphasis added).  The government relies upon cases in which a defendant sought to admit statements made to law enforcement *after* the cessation of any alleged criminal conduct. *See United States v. Blake*, 195 F. Supp. 3d 605, 610 (S.D.N.Y. 2016); *United States v. Dinga*, 609 F.3d 904 (7th Cir. 2010); *United States v. Benalcazar*, No. 09-cr-144, 2011 WL 4553027, at *13 (N.D. Ill. Sept. 29, 2011).  Unlike in those cases, Ms. Morton's assistance to the authorities took place in the midst of the conduct the government alleges is wrongful.  In other words, Ms. Morton reported to authorities her suspicions as to what the government itself alleges was the criminal conduct presently underway.  Because of this, the statements at issue clearly demonstrate Ms. Morton's *present* state of mind with respect to allegedly continuing misconduct at the time she made the statements.  Such statements are clearly admissible under Rule 803(3).

Next, the government calls into question the credibility of Ms. Morton's efforts to assist the investigation.  It complains that those efforts occurred after the first bond issuance and after she may have learned of client complaints with respect to the bonds.  The timing of her assistance to the authorities, the government argues, renders her statements untrustworthy so as to mislead the jury.  This argument completely misstates Second Circuit law and seeks to substitute the governments' judgment for the jury's.  The Second Circuit holds that it is the province of the jury to determine the interpretation and credibility of a defendant's exculpatory statements under Rule 803(3).  United States v. *DiMaria*, 727 F.2d 265, 272 (The possibility of admitting certain statements with low degrees of credibility is "preferable to requiring preliminary determinations of the judge with respect to trustworthiness, with attendant possibilities of delay, prejudgment and encroachment on the providence of the jury."); *United States v. Cardascia*, 951 F.2d 474, 487-88 (2d Cir. 1991) ("[T]he likelihood that the declarant is misrepresenting his state of mind is not an additional qualification to the admissibility of state of mind hearsay statements."); *Shakur*, 1988 WL 31745, at *3 ("Credibility issues [for the jury] include: whether the witness's description of the defendant's statement is to be believed; and whether the particular state of mind ascribed by the defense to the statement is to be believed."); *United States v. Yu*, 697 F. Supp. 635, 637-38 (E.D.N.Y. 1988) ("Rendering judgments as to the credibility of evidence . . . is generally the exclusive province of finders of fact.  This Court, therefore, has not considered the veracity of [the defendant's] statement or that the statement is of a self-serving nature.  Such considerations matter only in the jury's determination as to how much weight to afford the statement.") (citing *United States v. Lawal*, 736 F.2d 5, 8 (2d Cir. 1984).

The Second Circuit recognizes that a defendant is innocent until *proven* guilty, and this bedrock principle is never more important than when considering the defendant's state of mind. In *DiMaria*, a case the government relies upon in its Motion, posited: "Dealing with the argument that declarations of a mental state by an accused could readily be trumped up, [Wigmore on Evidence] protested 'the singular fallacy . . . of taking the possible trickery of guilty persons as a ground for excluding evidence in favor of a person not yet proved guilty,'…and contended that to sustain the argument would be inconsistent with the presumption of innocence." *DiMaria*, 727 F.2d at 271 (quoting 6 Wigmore on Evidence § 1732, at 159-162). Invoking this rule, the Second Circuit stated: "The Assistant United States Attorney also stated in objection that [the defendant's] remark was 'an absolutely classic false exculpatory statement.'… False it may well have been but if it fell within Rule 803(3), as it clearly did if the words of that Rule are read to mean what they say, its truth or falsity was for the jury to determine." *DiMaria*, 727 F.2d at 271 (internal citation excluded).  Ms. Morton's actions in assisting the government speak volumes about her state of mind.  The jury should appropriately have the opportunity to evaluate it.

The other cases upon which the government relies are inapplicable.  *United States v. Dinga*, a Seventh Circuit case, addressed the admissibility of an individual's offer to take a polygraph.  609 F.3d at 908.  But the court there excluded the evidence "because it viewed the 'offer' as [the defendant] being backed into a corner until, as a last resort, he agreed to take a test because he felt that he had no better options."  *Id.*  The court added that a law enforcement agent "initiated and pushed the idea" and the already-arrested defendant's "offer" to take the test "seemed reluctant."  *Id.*  Not only was the offer in *Dinga* so unreliable that it lacked probative value, the unreliability of polygraphs and questions as to the admissibility of polygraph results

had "great potential of confusing the issues and misleading the jury."  *Id.* at 908-09.  In contrast, Ms. Morton willingly and of her own accord[1] approached law enforcement with an offer to assist before the onset of any investigation that could implicate her.  Moreover, the government thought enough of her so-called "self-serving" statements that it used her to gather evidence of the very wrong-doing that will be before this Court at trial.[2]

So weak is the government's position that it asks this Court to exclude evidence based on an unpublished decision from the Northern District of Illinois,  *United States v. Benalcazar*, 2011 WL 4553027.  The Court should give this case no weight.  In any event, *Benalcazar* cited *Dinga* in determining that a defendant's statement made white wearing a wire was unreliable because it "occurred under contrived circumstances where he had a motivation to lie to benefit himself."  *Id* at *14.  The Illinois trial court added that "any cooperation after [the defendant] finished participating in the scheme is irrelevant to show he previously lacked criminal intent while participating in the conspiracy."  *Id.*  In contrast, Ms. Morton had no such obvious reason to fabricate her statements to authorities, which were made *during* the course of alleged misconduct.  Even despite the clear unreliability of the defendant's statements in *Benalcazar*, the court allowed the defendant "the opportunity to introduce evidence that he agreed to speak with agents, turn over his computer, and consent to a search of his office . . . ."  *Id.*  Thus, even this

---

[1]  The government itself emphatically argued the voluntariness of Ms. Morton's decision to cooperate in its response to Ms. Morton's pretrial motions, which resulted in the Court's order not to suppress the evidentiary fruits of that cooperation. (ECF Dkt. No. 308 at 8-13).  The government should not enjoy the fruits of Ms. Morton's cooperation at trial while excluding the means by which it obtained such evidence.

[2]  As the Court well knows, the government routinely refuses to accept the assistance of an individual who lies to the government.  In the instant case, the government took Ms. Morton's assistance, used it to render indictments and obtain convictions and now asks this Court to deem the information unreliable under *Dinga*.  This position is irreconcilable.

case supports Ms. Morton's contention that evidence of her cooperation with law enforcement should be admitted.

> **B.**   **Evidence of Ms. Morton's Cooperation with Law Enforcement is Relevant and Carries No Risk of Undue Prejudice, Confusing the Issues, or Misleading the Jury**

Ms. Morton's statements to authorities are admissible either as non-hearsay or under a hearsay exception.  In addition, they are highly relevant to the issues at hand and carry little to no possibility of undue prejudice to the government, confusing the issues, or misleading the jury.

First, Ms. Morton's statements are directly relevant to whether or not she formed the necessary criminal intent of any count in the Superseding Indictment.  Whether her statements reflect her state of mind at the time she cooperated with authorities, or serve as circumstantial evidence of her state of mind at times before she reached out to the authorities, they are permissible to show her consciousness of innocence.

The Second Circuit is clear that consciousness of innocence evidence is relevant and admissible.  *See, e.g.*, *United States v. Biaggi*, 909 F.2d 662, 691-92 (2d Cir. 1990).  It is all the more relevant when the government intends to introduce evidence of a defendant's consciousness of guilt.  In *Biaggi*, the Second Circuit admitted a defendant's statement declining an offer of immunity as relevant evidence of the defendant's consciousness of innocence.  *Id.*  In doing so, the court stated:

> With the credibility of the accusations about Mariotta's knowledge of wrongdoing seriously challenged, evidence of his denial of such knowledge in response to an opportunity to obtain immunity by admitting it and implicating others became highly significant to a fair presentation of his defense. ***The unfairness of preventing his presentation of evidence of his consciousness of innocence was exacerbated when the Government presented evidence of his consciousness of guilt.***

*Id.* at 692 (emphasis added).

9

Here, the government will seek to introduce evidence of Ms. Morton's consciousness of guilt. In fact, the government in its Motion relies upon GX 3004-B, a text message purporting to show that Ms. Morton was aware of problems with the bonds before she approached the authorities. Mot. at 9. As in *Biaggi*, the unfairness of preventing Ms. Morton's presentation of evidence of her consciousness of innocence will be exacerbated by the government presenting evidence that purports to show her alleged criminal intent.

This is a question of what weight to give evidence of Ms. Morton's consciousness of innocence, and not whether she can proffer it at all. The jury must determine what significance to apply to Ms. Morton's statements and whether to agree with the inference that her efforts to contact and subsequently assist the government demonstrate an absence of criminal intent. *See Biaggi*, 909 F.2d at 690-91. The government's papers, however, suggest that it would rather this Court do the jury a disservice by withholding information critical to its charge as a finder of fact. *See id.* at 691. The Second Circuit in *Biaggi* said it best: "Let the accused's *whole* conduct come in; and whether it tells for consciousness of guilt or for consciousness of innocence, let us take it for what it is worth, remembering that in either case it is open to varying explanations and is not to be emphasized. Let us not deprive an innocent person, falsely accused, of the inference which common sense draws from a consciousness of innocence and its natural manifestations." *See id.* (internal quotation omitted) (emphasis added).

Second, Ms. Morton's statements to law enforcement in 2015 are essential to Ms. Morton's defense. The government has alleged that she participated in criminal conspiracies *through April 2016*. As Ms. Morton informed the Court in her substantive motions, her efforts to assist the government occurred during the alleged time frame of the so-called conspiracy. It is for the government, not the Court, to resolve how the government will demonstrate that Ms.

10

Morton participated in conspiracies through mid-2016 while she met with the government and recorded her alleged coconspirators. The government's Motion makes it clear that it hopes to avoid this contradictory set of circumstances altogether. The Court, however, should not bail the government out of its overreach by excluding admissible evidence that calls into question the very charges the government brought. Ms. Morton's statements will establish that she reported to the government her concerns about the bonds and some of her alleged co-conspirators and will call into question the government's theory about her participation in the alleged conduct.

Other than stating, without explanation, that admitting Ms. Morton's cooperative statements would cause jury confusion, the government offers no reason to exclude this evidence under Rule 403. The only confusion the jury will suffer is from the government's own contradictory construction: how could Ms. Morton have participated in conspiracies through April 2016, when starting in June 2015 she contacted and affirmatively assisted the government in its investigation of those alleged conspiracies?

Because Ms. Morton's assistance to the authorities and statements made in connection with that assistance are admissible either as non-hearsay or under Rule 803(3), and because they are relevant both to Ms. Morton's intent and to her involvement in the alleged conspiracies, the Court should deny the government's Motion to exclude this critical evidence.



███████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████

██████████████████████████

## CONCLUSION

For the foregoing reasons, Michelle Morton respectfully requests that the Court deny the government's motions *in limine*.  Further, Ms. Morton joins the response arguments filed by the other defendants in opposition to the government's motions in *limine*. In particular, Ms. Morton joins in Defendant Gary Hirst's response to the government's motions in limine to (1) exclude certain prior bad acts of Jason Galanis; and (2) exclude evidence of witnesses' failure to pay child support and patronizing of prostitutes.

Dated:  New York, New York
         April 9, 2018

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: _____
Gregory Morvillo
Savannah Stevenson
Caitlin Sikes
51 West 52nd Street
New York, New York 10019
(212) 506-5000

*Attorneys for Defendant Michelle Morton*