USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED:

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 16-CR-371-5 (RA) |
| v. | |
| MICHELLE MORTON, | ORDER |
| Defendant. | |

RONNIE ABRAMS, United States District Judge:

## INTRODUCTION

Defendant Michelle Morton has moved to withdraw her guilty plea. For the reasons explained herein, her motion is denied.

## BACKGROUND

On May 16, 2018, six days prior to the start of trial and following extensive pre-trial and *in limine* motion practice that consisted of repeated efforts by Morton to secure a severance and an adjournment of the trial date—including at least one instance on which she requested an indefinite adjournment—Morton entered a guilty plea to two counts contained in the Third Superseding Indictment. At the plea hearing, the Court exhaustively questioned Morton regarding, among other things, her recent physical ailments, mental state, and medication regimen. Although she acknowledged previously being treated for mental illness thirty years ago after she was the victim of a crime, Morton definitively affirmed that there was nothing about that or anything else that affected her mental state or otherwise prevented her from entering a knowing and voluntary guilty plea. Tr. 4:6–6:10, May 16, 2018, ECF No. 503. Her counsel similarly confirmed that she was competent to enter a plea. Tr. 5:16–19. Particularly due to the extensive, contentious pre-trial

litigation and the fact that this plea was entered on the eve of a lengthy trial, the Court vividly remembers this hearing and its impression of Morton as remarkably calm, collected, and poised.

On June 14—in the fourth week of the trial involving three of her co-defendants and with her November sentencing date set—Morton submitted an *ex parte* letter informing the Court that she intended to make a motion to withdraw her plea. Still having not received Morton's motion by July 9, the Court ordered her to submit it no later than August 3. ECF No. 539. The next day, after being advised that Morton refused to cooperate with the preparation of her presentence report until her motion was disposed of, the Court ordered her to submit it by July 20 to permit ample time for the preparation of the report in the event her motion was denied. ECF No. 542.

## LEGAL STANDARD

Rule 11(d)(2)(B) provides that a defendant may withdraw a plea of guilty prior to sentencing if the defendant can demonstrate a "fair and just reason" for withdrawal. "Notwithstanding the broadness of Rule 11, courts have observed that a guilty plea is a grave and solemn act, not to be entered into or withdrawn lightly." *United States v. Boamah*, No. 14-CR-0673 (ALC), 2017 WL 2799164, at *4 (S.D.N.Y. June 26, 2017) (citation omitted). There is also a strong public interest in "the finality of guilty pleas," the withdrawal of which "undermines confidence in the integrity of our judicial procedures." *United States v. Maher*, 108 F.3d 1513, 1529 (2d Cir. 1997) (citation omitted).

The defendant bears the burden of demonstrating that there are valid grounds on which to withdraw a plea. *United States v. Kolaczynski*, No. 16-CR-0834 (NSR), 2018 WL 377342, at *1 (S.D.N.Y. Jan. 10, 2018). In determining whether the defendant has shown a "fair and just reason" to justify withdrawal, a district court "should consider, *inter alia*: (1) the amount of time that has elapsed between the plea and the motion; (2) whether the defendant has asserted a claim of legal

innocence; and (3) whether the government would be prejudiced by a withdrawal of the plea." *United States v. Doe*, 537 F.3d 204, 210 (2d Cir. 2008). Courts may also consider whether the defendant has "raise[d] a significant question about the voluntariness of the original plea." *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997). The government bears no burden to show prejudice if the defendant fails to show sufficient grounds to justify withdrawal. *Id.*

A defendant's self-incriminating statements made under oath at her plea allocution hearing are deemed to "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). A defendant's subsequent assertion of conclusory statements that simply contradict what was said during the plea allocution are thus insufficient to withdraw a guilty plea. *See Torres*, 129 F.3d at 715. In order to prevail on a motion to withdraw a plea predicated upon a claim of innocence, "the claim must be supported by evidence." *United States v. Hirsch*, 239 F.3d 221, 225 (2d Cir. 2001). "[I]n reviewing the belated claims of innocence, [the court] must draw all permissible inferences in favor of the government and against the defendant[.]" *Maher*, 108 F.3d at 1530.

"A defendant is not entitled to an evidentiary hearing as a matter of right whenever he seeks to withdraw his guilty plea." *United States v. Gonzalez*, 970 F.2d 1095, 1100 (2d Cir. 1992). Indeed, "[n]o hearing need be granted when the allegations . . . merely contradict the record, are inherently incredible, or are simply conclusory." *Id.*

## DISCUSSION

### I. Morton Has Failed to Sustain Her Burden

Morton argues that the relevant factors weigh in her favor. In particular, she asserts that she moved to withdraw her plea in a timely fashion; she professes her innocence, which she claims

is supported by evidence and does not contradict her plea allocution; and the government will not be prejudiced if her plea is withdrawn. The Court disagrees.

It is true that the mere passage of time does not require the denial of Morton's motion. Courts in this Circuit have typically found only longer periods as dispositive in precluding the withdrawal of a plea. *See, e.g., United States v. Dean*, 591 F. App'x 11, 14 (2d Cir. 2014). The Court does note, however, the peculiar timing of the events relating to Morton's plea. As mentioned above, Morton entered her plea on May 16, six days before the scheduled start date of her trial. She claims to have had an epiphany of sorts a mere two days later. Morton Aff. ¶ 15, ECF No. 551. She did not, however, notify the Court of her desire to withdraw her plea at that time, which would have permitted her to proceed to trial with her co-defendants. Particularly in light of Morton's persistent efforts to secure a severance—an issue on which the Court ultimately had no occasion to rule in light of her guilty plea—and an adjournment, the sequence and timing of these events is notable.

In any event, the compelling factor at this step of the analysis is Morton's argument regarding her innocence. Morton is obviously correct that prior to her guilty plea, she had maintained her innocence. That is not an unusual occurrence in criminal cases. Her claim now that she is innocent is belied by the record.

During her plea allocution, Morton admitted to conduct that clearly satisfies counts one and four of the Third Superseding Indictment, namely conspiracy to commit securities fraud and the substantive offense of investment advisor fraud. Indeed, although she now asserts her innocence on the basis that Jason Galanis "methodically manipulate[ed]" her, she "reli[ed] on individuals with more specific knowledge," and she tried to cooperate with the government, Morton Mot. 8, ECF No. 549, she nonetheless still acknowledges that she "allocuted to conduct

4

sufficient to satisfy the basic elements" of the charges to which she pled and that "her allocution is consistent with the evidence supporting her defenses," Morton Mot. 14. Specifically, she allocuted as follows:

> Your Honor, on or about April 2015 while I was chief executive officer of a registered investment adviser known as Atlantic Asset Management I agreed with others to purchase certain bonds for a client account at Atlantic. I knew there was a material conflict of interest in connection with the bonds and did not disclose it to the client before making the purchase. This was wrong for me to do. This enabled Jason Galanis to steal the bond proceeds through a broader fraud that I did not know anything about and, therefore, my investors lost money. And for that I am truly sorry.

Tr. 20:15–25. Morton's counsel agreed that there was an adequate factual basis for her plea. Tr. 21:17–20. As the government notes, prior to this allocution Morton, assisted by her able counsel, signed the agreement containing the terms of her plea. Tr. 16:11–20. Morton further confirmed for the Court that she had reviewed the plea agreement with her attorneys and that she was "very satisfied" with their "excellent" representation. Tr. 6:7–10. Morton's allocution thus weighs heavily against withdrawal. *See United States v. Rodriguez*, No. 12-CR-844 (RWS), 2017 WL 1498049, at *3 (S.D.N.Y. Apr. 26, 2017) ("Although today Defendant professes her innocence and the existence of coercion when pleading guilty, she admitted the opposite under oath . . . during her plea allocution.").[1]

Morton's argument turns instead upon allegations of stress based on her aforementioned physical ailments, financial difficulties that have also impacted her parents, and her being ostracized by siblings and former colleagues. These stresses, she claims, resulted in a "momentary

---

[1] Morton's attempts to provide evidence of her innocence are similarly unavailing. As demonstrated by the six-week trial of three of Morton's co-defendants, the record in this matter is complex and voluminous. Morton's effort to identify a sampling of communications that she deems probative of her innocence is thus unpersuasive. Nor are Morton's arguments centered on her purported cooperation efforts. As the government rightly notes, Morton attempted to cooperate in June of 2015, months after WLCC bonds were deposited into accounts of clients of Hughes and Atlantic and only after she was put on notice by clients that she would likely face legal action. Morton Mot. 12. Most importantly, and as Morton acknowledges, this evidence is not inconsistent with her plea allocution. Morton Mot. 14.

5

lapse into self-delusion about her guilt." Morton Mot. 2. The Court is sympathetic to the difficulties Morton has endured. But stress alone cannot be a basis to withdraw a valid guilty plea. *See, e.g., Kolaczysnki*, 2018 WL 377342, at *3 ("Defendant's concern over his family members' fragile medical and emotional states is an insufficient basis for withdrawing his plea."). Indeed, virtually every criminal defendant encounters additional sources of stress that flow from a criminal prosecution and its attendant consequences.

Moreover, as previously noted, before accepting her plea the Court thoroughly questioned Morton regarding her physical and psychiatric condition, as well as her medication regimen. The Court was aware that Morton had experienced physical ailments in the previous months, although it had never been informed that these ailments or the prescribed medications affected her cognitive abilities. Nonetheless, the Court specifically inquired as to whether "anything about your health condition [] affects your ability here and now to understand what's happening in these proceedings." Tr. 5:2–4. Morton answered "[n]o, nothing that affects my understanding." Tr. 5:5–6. Morton's counsel also represented that she was in an able state of mind. Tr. 5:16–19. Morton rightly notes in her moving papers that she remained seated throughout the course of the colloquy. She now attributes this decision to the fact that she was "weak and shaking" as a byproduct of stress. Morton Reply 2 n.2, ECF No. 557. The record, however, reflects only that Morton felt "unsteady on her feet," Tr. 2:10–13, which the Court interpreted as her feeling unwell physically. In any event, the Court, in its observations of Morton during the hearing, and with the benefit of knowing that she had experienced physical ailments in previous months, found her to be exceptionally controlled, calm, and collected.

6

## II. Prejudice to the Government

Even assuming, *arguendo*, that Morton had sustained her burden, the prejudice to the government would preclude her from withdrawing her plea. Especially baffling is Morton's suggestion that the *government* would be placed in an advantageous position were she allowed to withdraw her plea. Morton misconstrues the government's argument as one merely of inconvenience. But that is not so.

First, the government would have to duplicate its trial preparation. *See United States v. Curtis*, No. 08-CR-183 (LAP), 2010 WL 2106168, at *9 (S.D.N.Y. May 19, 2010) ("[G]iven that Curtis decided to plead the Friday before trial was to begin, the Government would have to duplicate its efforts to prepare for trial."). This particular strand of prejudice is heightened by the fact that the government not only prepared for trial, but "spent significant resources on the trial of [three of Morton's] co-defendant[s]." *United States v. Barnes*, Nos. 03-CR-1238 & 05-CR-0116 (KMW), 2008 WL 2156739, at *2 (S.D.N.Y. May 21, 2008). The government would also have to, for a second time, arrange for many of the pertinent witnesses to testify. *See United States v. Cayce*, No. 04-CR-506 (LAP), 2010 WL 2106174, at *16 (S.D.N.Y. May 19, 2010). As the government notes, this was a heavily litigated matter that culminated in a six-week jury trial. Given the nature of the allegations, any trial of Morton alone is unlikely to be materially shorter. Indeed, removing Morton from the case actually reduced the number of counts at trial from four to two.

Second, Morton has had a full preview of the government's case and trial strategy. It would thus be prejudicial were the government now required to litigate this case against Morton. Certainly, the government appreciates the broad contours of what Morton's trial strategy would be, but that is not comparable to the level of insight Morton enjoys as to the government's strategy

with the benefit of a full transcript of the government's examination of the vast majority of the witnesses that would be critical to a trial involving only Morton. Finally, because the government produced its 3500 material on April 2, 2018, Morton "could use the information not just for impeachment purposes, as intended, but [s]he could also use the material in the preparation of h[er] defense." *Curtis*, 2010 WL 2106168, at *9; *accord United States v. Gonzalez*, No. 06-CR-726 (WHP), 2010 WL 1640186, at *7 (S.D.N.Y. Apr. 8, 2010). Although the Court would typically be less persuaded that the government was prejudiced by a defendant's preview of its case, here that argument is strengthened by the suspicious timing of events relating to the entry of Morton's plea and the delay between her so-called epiphany and the submission of her motion.

## CONCLUSION

In sum, Morton offers no evidence or arguments that were unknown to her before she entered her guilty plea. She acknowledges that the factual basis articulated for her plea is both accurate and sufficient to satisfy the legal elements of the charges to which she pled. She has not offered a single compelling reason to permit withdrawal of her plea, which is countered by the prejudice that would befall the government were she allowed to do so. For the foregoing reasons, Morton's motion is denied. The Clerk of Court is respectfully directed to terminate the motion pending at docket entry 548.

SO ORDERED.

Dated: August 17, 2018
New York, New York

Ronnie Abrams
United States District Judge

8